1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

CENTRAL DISTRICT OF CALIFORNIA

9

10   LOS ANGELES WATERKEEPER,

11            Plaintiff,

12        vs.

13   PICK-YOUR-PART AUTO
14   WRECKING,

15            Defendant.

16

Case No:  2:22-cv-00388-PA-JC

*Assigned to Hon. Percy Anderson*

**CONSENT DECREE**

Date Action Filed: January 19, 2022

17
18
19
20
21
22
23
24
25
26
27
28

**WHEREAS**, Los Angeles Waterkeeper (hereinafter "LA Waterkeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Dominguez Channel Estuary, Los Angeles Harbor, and Pacific Ocean;

**WHEREAS**, LA Waterkeeper alleges that Defendant Pick-Your-Part Auto Wrecking is the operator of the facility located at 1232 Blinn Ave., Wilmington, CA 90744 (hereinafter "the Facility");

**WHEREAS**, storm water flows off-site from the Facility into the Dominguez Channel Estuary and Los Angeles Harbor;

**WHEREAS,** discharges from the Facility are presently regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 adopted by the California State Water Resources Control Board ("State Board") via Water Quality Order No. 2014-0057-DWQ, which became effective July 1, 2015, as amended by Order 2015-0122-DWQ, which was adopted by the State Board on November 6, 2018 ("General Permit"). Discharges from the Facility are further regulated by the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** not later than November 17, 2021, LA Waterkeeper provided notice of violations of the CWA by Defendant and of LA Waterkeeper's intention to file suit against Defendant to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Board; the Executive Officer of the California Regional Water Quality Control Board, Region 4 ("Regional Board"); the U.S. Attorney General, and the Defendant ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A);

CONSENT DECREE

61225437.v1

1    **WHEREAS**, on January 19, 2022, LA Waterkeeper filed a complaint
2    against Defendant in the United States District Court, Central District of California
3    alleging ongoing violations of the CWA ("Complaint");

4    **WHEREAS**, this Consent Decree shall be submitted to the EPA and United
5    States Department of Justice ("DOJ") for the statutory review period pursuant to
6    33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

7    **WHEREAS**, LA Waterkeeper and Defendant have agreed that it is in the
8    Parties' mutual interest to enter into a Consent Decree setting forth terms and
9    conditions appropriate to resolving the allegations set forth in the Complaint
10    without further proceedings and without any admission of liability on the part of
11    the Defendant;

12    **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
13    shall be made in compliance with all applicable Federal and State laws and local
14    rules and regulations; and

15    **WHEREAS**, the Parties enter this Consent Decree with the objectives of
16    ensuring: (1) that Defendant continues to improve its efforts to comply with the
17    CWA and the General Permit; and (2) that Defendant continues to use, implement,
18    and improve ways, means, and methods to prevent or reduce the discharge of
19    pollutants in storm water runoff from the Facility.

20    **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**
21    **PARTIES AND ORDERED AND DECREED BY THE COURT AS**
22    **FOLLOWS:**

23    **I.    DEFINITIONS**

24    1.    Unless otherwise expressly defined herein, terms used in this Consent
25    Decree which are defined in the CWA or in regulations or rules promulgated under
26    the CWA have the meaning assigned to them in the statutes or regulations or rules.
27    Whenever terms listed below are used in this Consent Decree, the following
28    definitions apply:

1    "Consent Decree" means this Consent Decree and any attachments or
2    documents incorporated by reference.
3        "Day" means a calendar day. In computing any period of time under this
4    Consent Decree, where the last day of such period is a Saturday, Sunday, or
5    Federal or State Holiday, the period runs until the close of business on the next day
6    that is not a Saturday, Sunday, or Federal or State Holiday.
7        "Design Storm" means the volume of runoff produced from an 85th
8    percentile, 24 hour storm event.
9        "Discharge Point" means each outfall and discharge location designated in
10    the then-current SWPPP for the Facility.
11        "Effective Date" means the effective date of this Consent Decree, which
12    shall be the date it is entered by the Court.
13        "PPT" means Pollution Prevention Team.
14        "SMARTS" means the California State Water Resources Control Board's
15    Stormwater Multiple Application and Report Tracking System.
16        "SWPPP" means a Storm Water Pollution Prevention Plan.
17        "Term" means the period between the Effective Date and the "Termination
18    Date" (as defined in Paragraph 52 below).
19        "Qualifying Storm Event" shall have the definition set forth in the General
20    Permit.
21        "Reporting Year" means the period from July 1 of a given year to June 30 of
22    the following year.
23        "Wet Season" means the seven-month period beginning October 1st of any
24    given year and ending April 30th of the following year.
25    **II.    JURISDICTION, VENUE, AND STANDING**
26        2.    This Court has jurisdiction over the subject matter of the claims
27    asserted by LA Waterkeeper pursuant to CWA section 505(a), 33 U.S.C. §
28    1365(a), 28 U.S.C. §§ 1331, 1355, and 1367. Venue is proper in this judicial

1  district pursuant to section CWA §§ 309(b), 505(c); 33 U.S.C. §§ 1319(b),

2  1365(c), and 28 U.S.C. § 1391(b) and (c). The parties waive any and all objections

3  that they may have to the Court's jurisdiction to enter and enforce this Consent

4  Decree. The Complaint states claims upon which relief may be granted pursuant to

5  CWA section 505, 33 U.S.C. § 1365.

6  **III.    EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

7          3.      LA Waterkeeper does not, by its consent to this Consent Decree,

8  warrant or aver in any manner that Defendant's compliance with this Consent

9  Decree will constitute or result in compliance with any federal or state law or

10 regulation.

11         4.      This Consent Decree is neither a permit nor a modification of existing

12 permits under any federal, state, or local law and in no way relieves Defendant of

13 its responsibilities to comply with all applicable federal, state and local laws and

14 regulations.

15         5.      Compliance with this Consent Decree, including all monetary

16 payments due under this Consent Decree (including but not limited to the payment

17 of any stipulated payments) and the completion of all remedial measures required

18 pursuant to this Consent Decree resolves LA Waterkeeper's civil claims for the

19 violations alleged against Defendant in this action.

20         6.      LA Waterkeeper's Release: Upon the Effective Date of this Consent

21 Decree, LA Waterkeeper hereby releases Defendant, and its officers, employees

22 and successors and assigns, from all violations of any Federal, State or local

23 environmental statute up to and including the Effective Date of this Consent

24 Decree. Except for claims for Defendant's failure to comply with this Consent

25 Decree, LA Waterkeeper further releases Defendant, and its successors and

26 assigns, from all claims, including claims that could have been made, pertaining to

27 alleged violations of any Federal, State or local environmental statute that may

28 occur due to discharges of storm water from the during the Term.

- 4 -

Case No. 2:22-cv-00388-PA-JC

[PROPOSED] CONSENT DECREE

61225437.v1

7. <u>Defendant's Release:</u> Upon the Effective Date of this Consent Decree, Defendant, on its behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and its agents, attorneys, and other representatives releases LA Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of its successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to LA Waterkeeper's Notice Letter and Complaint up to the Effective Date.

8. <u>Successors:</u> The provisions of this Consent Decree apply to and bind LA Waterkeeper and Defendant (collectively, "Parties"), including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms. No change in ownership or corporate or other legal status of Defendant or any transfer of Defendant's assets or liabilities shall in any way alter the responsibilities of Defendant or any of its successors or assigns thereof under this Consent Decree, and this Consent Decree shall be binding on any successors or assigns of Defendant. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its agents, servants, contractors, employees, successors or assigns to take actions necessary to comply with this Consent Decree, unless such actions were prevented by a Force Majeure.

9. Except as otherwise provided in this Part, the sale or transfer of ownership or operation of any activities or operation covered under SIC Code 5015 on any portion of the Facility that is subject to coverage under the General Permit or then-applicable NPDES permit does not relieve Defendant of its obligations

Case No. 2:22-cv-00388-PA-JC

[PROPOSED] CONSENT DECREE

61225437.v1

under this Consent Decree. Any sale or transfer of ownership or operation of any

activities or operation covered under SIC Code 5015 on any portion of the Facility

that is subject to coverage under the General Permit or then-applicable NPDES

permit without the acquiring party entering into a full assignment and assumption

of this Consent Decree, and following a Court order transferring all obligations to

the acquiring entity, shall constitute a violation of this Consent Decree by

Defendant. Not later than thirty (30) days prior to sale or transfer of ownership or

operation of any portion of the Facility covered under SIC Code 5015, Defendant

shall give written notice of this Consent Decree to each purchaser or successor in

interest. Defendant also shall give written notification to LA Waterkeeper, in

accordance with Paragraph 53 (NOTICES), of the anticipated sale or transfer of

ownership or operation of the Facility at least thirty (30) days prior to the

scheduled date of such sale or transfer and may seek from the Court a modification

of this Decree that would transfer responsibility for compliance with some or all of

these provisions to its successor. The Court shall grant such request if the

successor is ready, willing and able to fully implement all obligations of Defendant

under this Consent Decree.

10.    The Parties agree to be bound by this Consent Decree and not to

contest its validity in any subsequent proceeding to implement or enforce its terms.

By entering into this Consent Decree, Defendant does not admit liability for any

purpose as to any allegation or matter arising out of the action. Nothing in this

Consent Decree shall constitute an admission of any fact or a waiver of any right

unless specifically set forth herein.

## IV.    REMEDIAL MEASURES

### A.    Initial Storm Water Pollution Control Measures

11.    Defendant shall continue to implement all BMPs in existence as of the

Effective Date unless it otherwise determines that other BMPs would be more

effective. In addition, Defendant shall develop and implement the BMPs identified

1  herein, as well as any other BMPs necessary to comply with the provisions of this

2  Consent Decree and the General Permit or then-applicable NPDES permit.

3  Specifically, Defendant shall develop and implement BMPs to prevent and/or to

4  reduce contamination in storm water discharged from the Facility sufficient to

5  reduce the levels of pollutants in storm water discharges below the levels in Table

6  1.

7       12.   <u>Good Housekeeping Practices</u>: Defendant shall implement the

8  following good housekeeping BMPs:

9       a.   <u>Covered Storage</u>: (i) Within thirty (30) days after the Effective

10  Date, Defendant shall manage all bins used for outdoor storage of equipment,

11  materials, trash, scrap metal, or waste by using bins that have attached covers, or

12  that are capable of being covered (tarped), and (ii) Defendant shall cover, tarp or

13  move smaller bins used for transport to covered areas prior to the start a Qualifying

14  Storm Event forecasted to occur with a minimum likelihood of occurrence of 50%

15  by the weather station described in Paragraph 12.d below.

16       b.   <u>Patching</u>: Defendant shall patch the impervious (paved) area of

17  the Facility where there are potholes, pits, cracks, and other degraded areas as and

18  to the extent practical.

19       c.   <u>Sweeping</u>:  Defendant shall: (i) continue to conduct street

20  sweeping in accordance with the SWPPP, as revised from time to time; and (ii)

21  manually sweep areas that are inaccessible to its street sweeper for absorbent and

22  trash on a daily basis.

23       d.   <u>Implementation of Pre-Rain Protocol</u>: Within thirty (30) days

24  after the Effective Date, Defendant shall institute a formal pre-rain protocol, for

25  implementation in advance of a Qualifying Storm Event forecasted to occur with a

26  minimum likelihood of occurrence of 50% by the National Weather service

27  forecast (<u>www.weather.gov</u>), using the Long Beach Airport as the applicable weather

28  station. The protocol shall involve, for Drainage Areas A and F: (1) a thorough

cleaning of all vehicle fluids on the ground through use of absorbent powder and
subsequent sweeping and disposal of the powder; (2) picking up all vehicle parts
and debris off the ground and placing them in covered storage bins (and closing
such bins); (3) closing all vehicle hoods and trunks; (4) installing tarp over all tire
storage areas, the tire breaking area, and all other areas where the then-current
SWPPP calls for such tarp; (5) installing booms in accordance with the Boom
Protocol in compliance with the then-current SWPPP. As used herein, the term
"Boom Protocol" means: (a) for Drainage Area A: laying down two layers each
consisting of wattle, oil boom, and zeolite sock within Drainage Area A, both 3-5
feet from the trench drain and 15-20 feet from the trench drain, extending across
the width of the Drainage Area, with an additional oil boom in the trench drain,
and an oil boom at the outfall cap unless Defendant determines that any such boom
would obstruct runoff from the cap or otherwise interfere with its operation; and
(b) for Drainage Area F: laying down four layers each consisting of a wattle, oil
boom, and zeolite sock, starting approximately 5 feet from Outfall F, and
extending up the Drainage Area in intervals until near the Engine/Transmission
Storage Area, extending across the width of the Drainage Area, plus a layer of oil
booms at the gate at Outfall F. Defendant shall no longer be required to implement
or maintain the foregoing pre-rain protocols upon the cessation of continual
discharge from the Discharge Points. Defendant shall make visual observations of
all activities implemented as part of the pre-rain protocol, record those
observations in writing, and provide copies of such records to LA Waterkeeper
within five (5) business days of request.

   e. <u>Hazardous Material Storage</u>:  Defendant shall store all
hazardous substances—including but not limited to all mercury switches, new or
used vehicle batteries, fuels, lubricating oils, hydraulic oils, engine coolant, and
coolant—and wastes under cover, on a sealed surface equipped with secondary
containment in secured and labeled containers. Defendant shall (1) label the waste

[PROPOSED] CONSENT DECREE

61225437.v1

1   containers with the name, description of the waste, and the current storage start

2   date, (2) keep the containers, containment and storage areas clean, dry and free of

3   spills, oil residues, trash, and debris, (3) maintain spill clean-up supplies in the

4   waste storage areas; (4) maintain a current inventory of hazardous materials and

5   wastes (e.g., batteries, waste oils, hydraulic oil/fluid, antifreeze, oil filters, oily

6   rags, used air filters, recycled fuels) generated onsite, and (5) inspect hazardous

7   materials and wastes storage areas daily for proper implementation and

8   maintenance of control measures and containment integrity.

9        f.    <u>Customer Access and Use of Facility</u>: Within thirty (30) days

10  after the Effective Date, Defendant shall post adequate signage in all customer

11  parking lots at the Facility (in English and Spanish) and take other measures as

12  necessary to advise customers of their responsibility to: (i) refrain from using any

13  portion of the customer parking lots for any automobile repair or dismantling

14  activities; and (ii) place all dismantled vehicle parts into appropriate storage bins.

15  For the avoidance of doubt, customer compliance or non-compliance with these

16  requirements does not excuse Defendant's liability or responsibility for any

17  violations of its obligations hereunder.

18       g.    <u>Inspections, and Site and BMP Operations</u>: Defendant shall

19  inspect operation work areas daily to ensure adequate implementation and

20  maintenance of the measures and best management practices called for in this

21  Paragraph 12.

22       h.    <u>Drainage Area E</u>: Defendant shall ensure that no "storm water

23  discharge associated with industrial activity," as defined in 40 C.F.R. §

24  122.26(b)(14), occurs from Drainage Area E at the Facility.

25       i.    Photographs: Defendant shall:

26            (i)    (A) take one-time Representative photographs

27                   documenting that the activities set forth in Paragraph

28                   12(a)(i) have been completed; and (B) take

- 9 -

[PROPOSED] CONSENT DECREE

61225437.v1

Representative photographs documenting that the activities set forth in Paragraph 12(a)(ii) have occurred not less than three (3) times per Reporting Year;

(ii)   take Representative photographs documenting the patches that have been implemented at the Facility, and the types of areas deemed impractical to patch, pursuant to Paragraph 12(b), promptly following the first date of implementation of such activities;

(iii)   take Representative photographs of: (A) the street sweeping machines used to comply with Paragraph 12(c) within thirty (30) days of the Effective Date, and thereafter if the street sweeping machines are modified; and (B) the areas where manual sweeping occurs as required by Paragraph 12(c), both one-time as of the first date of implementation of such activities and thereafter if there are significant changes to those areas;

(iv)   take Representative photographs documenting that the activities set forth in Paragraph 12(d) have been completed not less than three (3) times per Reporting Year;

(v)   take Representative photographs documenting that the activities set forth in Paragraph 12(e) have been completed not less than three (3) times per Reporting Year;

(vi)   take Representative photographs documenting that the activities set forth in Paragraph 12(f) have been completed, both on a one-time basis promptly following the first date of implementation of such activities, and

[PROPOSED] CONSENT DECREE

61225437.v1

1                           thereafter not less than three (3) times per Reporting

2                           Year;

3               (vii)    take Representative photographs documenting

4                           compliance with the requirements of Paragraph 12(h) not

5                           less than three (3) times per Reporting Year;

6               (viii)   take Representative photographs documenting that the

7                           activities set forth in Paragraph 13(b) have been

8                           completed not less than three (3) times per Reporting

9                           Year; and

10              (ix)     for all photographs required by this Paragraph 12(i),

11                           provide copies of such photographs taken by Defendant

12                           to LA Waterkeeper within five (5) business days of

13                           request.

14 As used in this Paragraph 12, the term "Representative" shall mean a sample of

15 photographs that seek to reflect the primary characteristics of the equipment,

16 operations or activities specified in the relevant subparagraph.

17       13.     <u>Maintenance of Storm Water System</u>: Defendant shall implement the

18 following storm water system conveyance BMPs:

19            a.       Defendant shall: (i) limit storm water discharges to only

20 Discharge Points; and (ii) inspect the perimeter of the Facility and implement such

21 measures as are necessary to prevent water from discharging from the Facility

22 perimeter at any location other than Discharge Points.

23            b.       Defendant shall regularly monitor and maintain all of the

24 Facility's storm water treatment or retention structures in a manner that ensures

25 they are kept free of debris and materials not related to the control and treatment of

26 storm water. Defendant shall clean the Facility's storm water conveyance system

27 and treatment or retention structures not less frequently than once per month by

28 clearing it of debris.

[PROPOSED] CONSENT DECREE

61225437.v1

14.    <u>Structural BMPs</u>: Defendant shall implement structural BMP
measures as follows:

a.    <u>Structural BMP Plan</u>:

i.    Defendant shall prepare a plan for installing structural
BMPs at the Facility capable of providing treatment of storm water discharges (a)
to a level commensurate with Best Available Technology Economically
Achievable ("BAT") and the Best Conventional Pollutant Control Technology
("BCT"), and (b) to a level necessary to ensure that pollutant levels in storm water
discharges do not exceed the values set forth in Table 1 ("Structural BMP Plan").

ii.    The Structural BMP Plan shall call for the design,
installation, and use of an advanced storm water treatment system at the Facility.
Such a system shall comprise at least three components: (1) a pre-treatment settling
process; (2) use of a flocculation process involving either polymer-assisted
coagulation or electrocoagulation, or equivalent; and (3) a filtration system to
remove the particles. If Defendant proposes to use a polymer-based system, the
Structural BMP Plan shall contain a proposal and schedule for performing bench
tests with candidate polymers using samples of Defendant's actual storm water to
guide selection of the best performing polymer.

iii.    The Structural BMP Plan shall call for any measures
necessary to ensure all storm water flows from Drainage Areas A and F are routed
to the advanced storm water treatment system to be discharged through a single
outfall at the Facility.

iv.    The Structural BMP Plan shall incorporate an analysis of
the storm water runoff volume from the Facility expected during a Design Storm.
The Structural BMP Plan shall ensure that the structural BMPs, including storm the
water conveyance system and the advanced treatment system, have sufficient storm
water capacity to convey and treat the storm water generated in a Design Storm.
Defendant shall install a rain gauge and data logger at the Facility so that accurate

61225437.v1

1  on-site precipitation data is available for use in determining whether a bypass event

2  has occurred.

3          v.      The Structural BMP Plan shall call for measures

4  necessary to operate and maintain the conveyance system and advanced treatment

5  system. At a minimum, the Structural BMP Plan shall describe the schedule for

6  inspecting the advanced treatment system, conducting cleaning of the system,

7  changing filtration media, and other ongoing operation and maintenance for the

8  advanced treatment system. Such measures shall incorporate and comply with all

9  measures called for in any manual, policy, or guidelines for operation and

10 maintenance provided by the system manufacturers or providers.

11         vi.     The Structural BMP Plan shall include a schedule for all

12 work to be completed as part of the Structural BMP Plan, including a work plan

13 setting forth intermediate deadlines for the design, procurement, permitting,

14 construction, and commissioning of the storm water conveyance system and

15 advanced treatment system. For the avoidance of doubt, such work plan may be in

16 the form of a Gantt chart, provided it contains the deadlines and milestones

17 referenced in the preceding sentence.

18         b.      Schedule for Preparation and Implementation of Structural

19 BMP Plan:

20         i.      Within ninety (90) days after the Effective Date,

21 Defendant shall send the Structural BMP Plan to LA Waterkeeper for review. LA

22 Waterkeeper shall have thirty (30) days upon receipt of the Structural BMP Plan to

23 provide Defendant with comments. Within thirty (30) days after Defendant's

24 receipt of LA Waterkeeper's comments on the Structural BMP Plan, Defendant

25 shall accept and incorporate LA Waterkeeper's comments or shall provide LA

26 Waterkeeper with a written explanation if Defendant declines to develop and/or

27 implement any of LA Waterkeeper's comments. Subject to Paragraph 59 (Force

28 Majeure), disputes regarding the adequacy of the Structural BMP Plan should not

impact the schedule for implementing any element of the Structural BMP Plan not disputed. Any disputes as to the adequacy of the Structural BMP Plan shall be resolved pursuant to the Dispute Resolution provisions of Section X (DISPUTE RESOLUTION).

ii.    Defendant shall commence implementation of all elements of the Structural BMP Plan promptly following the resolution of disputes arising from LA Waterkeeper's comments. Subject to Paragraph 59 (Force Majeure), Defendant shall use good faith efforts to complete implementation of all elements of the Structural BMP Plan by October 1, 2023. Thereafter, Defendant shall properly operate and maintain the storm water conveyance and advanced treatment system in accordance with the Structural BMP Plan for the life of the Consent Decree.

15.    Action Plan Process: Following the implementation of the Structural BMP, if Defendant discharges non-stormwater from a Discharge Point, or discharges stormwater for any two (2) Qualifying Storm Events within a Reporting Year pursuant to Paragraph 20 below showing a level of contaminant above any Table 1 level, Defendant shall prepare a plan for reducing and/or eliminating the relevant discharge of pollutants ("Action Plan") and submit it to LA Waterkeeper within thirty (30) days of receipt of the laboratory report triggering the Action Plan.

**Table 1**

| Parameter | Level |
|---|---|
| Total Suspended Solids (TSS) | 100 milligrams per liter ("mg/L") |
| Oil & Grease (O&G) | 15 mg/L |
| pH | Below 6.0 pH units; Above 9.0 pH units |
| Copper | 0.0332 mg/L |
| Zinc | 0.26 mg/L |

[PROPOSED] CONSENT DECREE

61225437.v1

| Aluminum | 0.75 mg/L |
|---|---|
| Iron | 1.0 mg/L |
| Lead | 0.262 mg/L |

16. <u>Action Plan Requirements</u>: Each Action Plan shall include at a minimum:

    a.    The identification of the contaminant(s) discharged in excess of the Table 1 water quality standard-based levels, and the levels of such contaminant(s);

    b.    An assessment of the source or cause of each contaminant exceedance;

    c.    The identification of additional BMPs or modifications to the existing BMPs that will be implemented to achieve compliance with the Table 1 water quality standard-based levels; and

    d.    The schedule for implementation of the proposed BMPs or BMP modification, with such schedules ensuring that all BMPs are implemented or modified as soon as possible, but in no case later than October 1 of each year that the Consent Decree is in effect.

17. <u>Action Plan Proposed BMPs</u>: The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    a.    <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    b.    <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

1           c.     <u>Treatment Systems</u>: Installing additional components or

2    systems, or otherwise improving, the advanced storm water treatment system, or

3    making changes to the operation and maintenance protocols for such system, to

4    provide more effective filtration treatment of storm water prior to discharge.

5           d.     <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or

6    eliminating existing BMPs, taking into account the age of the BMPs involved or

7    employed, the engineering aspect of the application of various BMPs, and any

8    adverse environmental impact of the BMPs.

9           e.     Such other additional BMPs as Defendant deems appropriate

10    for evaluation.

11        18.    <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon

12    receipt of Defendant's Action Plan to provide Defendant with comments. Within

13    thirty (30) days after Defendant's receipt of LA Waterkeeper's comments on the

14    Action Plan, Defendant shall accept and incorporate LA Waterkeeper's comments

15    of recommended additional BMPs into the Action Plan, or shall provide LA

16    Waterkeeper with a written explanation if Defendant declines to develop and/or

17    implement any of LA Waterkeeper's recommended additional BMPs. Disputes

18    regarding the adequacy of a particular BMP shall not impact the schedule for

19    implementing any other BMP set forth in the Action Plan. Any disputes as to the

20    adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution

21    provisions of Section X (DISPUTE RESOLUTION).

22        19.    <u>Implementation of Action Plan</u>: Defendant shall implement any

23    Action Plan approved pursuant to Paragraph 18 as a requirement of the Consent

24    Decree. Defendant shall notify LA Waterkeeper in writing when the Action Plan

25    has been completely implemented.

26

27

28

[PROPOSED] CONSENT DECREE

61225437.v1

## V. SAMPLING, MONITORING, INSPECTION & REPORTING

### A. Storm Water Sampling

20. Defendant shall collect storm water discharge samples from Outfalls A and F (as defined in the SWPPP, or any other Discharge Point subsequently identified in the SWPPP) until such time as the structural BMP system is installed, and thereafter, at the single outfall from the structural BMP system implemented pursuant to Paragraph 14, according to the following sampling schedule:

a. During the first and second Reporting Years of this Consent Decree (the Parties agreeing that the first Reporting Year shall commence on July 1, 2023), and except as set forth below in this paragraph, Defendant shall collect storm water samples from discharges generated by three Qualifying Storm Events per Wet Season, if there are three Qualifying Storm Events from each Discharge Point at the Facility (*i.e.*, shall take samples on three separate Days during which storm water discharges from the Facility are occurring). During subsequent Reporting Years during the Term, Defendant shall collect storm water samples from discharges generated by two Qualifying Storm Events per Wet Season from each Discharge Point at the Facility.

b. Defendant shall analyze each storm water sample collected from a Discharge Point for each of the parameters listed on the Table 1. Should operations change at the Facility, Defendant shall conduct sampling for any additional priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Defendant's storm water discharges in light of the changed operations.

21. While this Consent Decree is in effect, Defendant shall take all storm water samples from Qualifying Storm Events in accordance with Section XI.B.5 of the General Permit (or any successor section thereof, or any other then-applicable NPDES permit).

22. If Defendant does not collect the required number of samples from the designated sampling locations due to lack of discharge, Defendant shall provide

[PROPOSED] CONSENT DECREE

61225437.v1

rain gauge data for the Wet Season to LA Waterkeeper along with a copy of the required observations stated in Paragraphs 26 through 28 for any day on which precipitation was recorded at the rain gauge, but no samples were collected by Defendant. Defendant shall provide this rain gauge data to LA Waterkeeper by June 1 following the Wet Season in which insufficient samples were collected.

23.    Defendant's storm water sampling shall comply with all storm water sampling protocols contained in the then-current SWPPP, including protocols for the collection, storage, handling, cooling, shipping, chain-of-custody, and transportation of such samples, and shall ensure that such samples are received by the laboratory within temperature criteria and laboratory method allowable hold times.

24.    Defendant shall have all storm water samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis. Defendant shall direct the laboratory to conduct analysis sufficient to detect individual constituents at or below the water quality standard-based levels set forth in Table 1.

25.    Defendant shall provide to LA Waterkeeper complete results from Defendant's sampling and analysis of storm water discharges to LA Waterkeeper within five (5) business days after receipt of the laboratory report from each sampling event.

**B.    Visual Monitoring**

26.    <u>Sampling Event Visual Monitoring</u>:

a.    During the life of this Consent Decree, Defendant shall conduct visual observations at all Discharge Points during every rain event sampled. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

b.    In addition, during business hours, Defendant shall observe all potential discharge locations on the perimeter of the Facility to determine if

1  discharge of storm water is occurring. During such wet weather visual

2  observations, appropriately trained staff of Defendant shall monitor for the

3  presence of visually observable oil sheens in storm water discharges and/or

4  discolored or turbid storm water discharges.

5        c.    Defendant shall take photographs of storm water discharges

6  from any sampled Discharge Point during all sampled Qualifying Storm Events,

7  including photographs of any visually observable oil sheens in storm water

8  discharges and/or discolored or turbid storm water discharges. These photographs

9  and records shall be made available to LA Waterkeeper within five (5) business

10  days upon written request.

11      27.   Monthly Visual Monitoring: At least once per calendar month,

12  appropriately trained staff of Defendant shall conduct visual inspections of the

13  Facility. Such inspections shall comply with all requirements of Section XI.A.1 of

14  the General Permit, and any successor thereof. Such monitoring shall include

15  outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor

16  industrial activities areas, BMPs, and all other potential sources of industrial

17  pollutants. All Discharge Points shall also be inspected for accumulation of dust,

18  sediment, sand, grit, oily substances, oily sheens upon any standing water, and

19  other materials associated with operations at the Facility. During the Wet Season,

20  such inspections shall further include observations of all storm water BMPs that

21  are used only during the Wet Season at the Facility to ensure that operational

22  BMPs are being implemented, structural BMPs are in good condition or working

23  order, and that BMPs have been effective in producing clean conditions at the

24  Facility. Such inspections shall further include observation as to whether there are

25  any non-storm water discharges from the Facility.

26      28.   Records of Visual Monitoring: Defendant shall record and maintain

27  written visual observation records of all monitoring activities set forth in Section

28  V.B of this Consent Decree in accordance with Section XI.A.3 of the General

1  Permit, and any successor thereof. Such records shall include, but not be limited to,

2  the persons who completed the inspection, the date of the inspection, and notes

3  sufficient to describe the completed activity and all observations thereof, including

4  but not limited to: (i) the presence of visually observable oil sheens in storm water

5  discharges and/or discolored or turbid storm water discharges; (ii) whether BMPs

6  are in an adequate condition; (iii) whether any repair, replacement, or operation

7  and maintenance is needed for any BMPs; (iv) the presence of any trash or debris

8  that needs cleaning; and (iv) other conditions that have the potential to lead to

9  pollutant loading in storm water discharges. Defendant shall make the records

10  required by this Paragraph available to LA Waterkeeper within five (5) business

11  days of request.

12      **C.**    **Compliance Monitoring**

13      29.    If either (a) an Action Plan is required pursuant to Paragraph 15, or (b)

14  Defendant fails to substantially comply with the requirements of Paragraph 12(i)(i)

15  through 12(i)(vii) or fails to strictly comply with Paragraph 12(i)(ix), then LA

16  Waterkeeper and its representatives may conduct one site inspection per Reporting

17  Year at the Facility during the life of this Consent Decree for the purpose of

18  evaluating compliance with this Consent Decree ("Annual Site Inspection"). In the

19  event that LA Waterkeeper disputes Defendant's compliance with this Consent

20  Decree pursuant to the Dispute Resolution provisions of Section X (DISPUTE

21  RESOLUTION), and if a site inspection would be relevant to resolving the dispute,

22  LA Waterkeeper and its representatives may conduct one additional site inspection

23  per Reporting Year ("Dispute-Related Site Inspection"), with the scope of such

24  inspection limited to the areas of the Facility relevant to resolving the dispute.

25  Notwithstanding anything to the contrary herein, there shall be no more than two

26  (2) site inspections per Reporting Year. During such site inspections, Plaintiff's

27  representatives shall: (i) observe all reasonable safety instructions provided by

28  Defendant during the inspection; (ii) use personal protective equipment

1   (goggles/glasses); (iii) wear makes that cover the nose and mouth; and (iv) wear

2   close-toed shoes. The site inspections shall occur during normal business hours.

3   LA Waterkeeper shall provide Defendant with five (5) days' notice prior to any

4   site inspection occurring outside of the Wet Season, and with forty-eight (48)

5   hours' notice prior to any site inspection occurring during the Wet Season

6   (provided that, if such Wet Season site inspection is to occur on a Monday, such

7   notice shall be delivered not later than the prior Friday). Notice shall be delivered

8   via email to the persons designated for notice pursuant to Paragraph 53 of this

9   Consent Decree.

10      30.    With the exception of a Dispute-Related Site Inspection (the scope of

11  which is limited as set forth in Paragraph 29), during the site inspections, LA

12  Waterkeeper and/or its representatives shall be allowed access to all outfalls,

13  Discharge Points, outdoor industrial equipment and storage areas, outdoor

14  industrial activities areas, BMPs (including but not limited to all storm water

15  conveyance systems and treatment systems), and all other potential sources of

16  industrial pollutants.

17      31.    During the site inspections, LA Waterkeeper and/or its representatives

18  may collect samples of discharges from the Facility. LA Waterkeeper shall provide

19  Defendant with copies of the lab reports within five (5) business days of receipt.

20  The samples shall be split and one half provided to Defendant so as to allow

21  Defendant to have its own certified California laboratory analyze the samples.

22  Defendant shall provide the laboratory results to LA Waterkeeper within five (5)

23  business days after receipt.

24      32.    LA Waterkeeper shall be permitted to take photographs or video

25  recording during any site inspection. If LA Waterkeeper takes photographs and/or

26  video recording, LA Waterkeeper shall provide Defendant with the photographs

27  and/or video within ten (10) business days after the site inspection. LA

28  Waterkeeper agrees that all individuals participating in a site inspection will

- 21 -                         Case No. 2:22-cv-00388-PA-JC
[PROPOSED] CONSENT DECREE

61225437.v1

1   execute, as necessary, a waiver and release substantially in the form set forth in

2   Attachment A to this Consent Decree.

3       33.   In the event that there is substantial deviation in the results of the

4   laboratory analysis of the samples taken by LA Waterkeeper and the split samples

5   provided to or taken by Defendant such that one set of results for a given storm

6   event shows levels of contaminants above those in Table 1 and the other set of

7   results shows levels of contaminants below those in Table 1, the parties shall

8   promptly meet and confer and attempt in good faith to reach agreement on whether

9   the sample results for the given storm event should be considered valid for

10  purposes of this Consent Decree or whether they should instead be disregarded and

11  another replacement sample taken (as feasible) in a following storm event. If the

12  parties are unable to reach agreement, this matter shall be decided pursuant to the

13  Dispute Resolution provisions of Section X (DISPUTE RESOLUTION).

14      **D.    Reporting**

15      34.   During the life of this Consent Decree, within five (5) business days

16  after the submission or receipt of such documents, Defendant shall provide LA

17  Waterkeeper with a copy of all documents pertaining to the General Permit or

18  then-applicable NPDES permit submitted to or received from the Los Angeles

19  Regional Water Quality Control Board ("Regional Board") or the State Water

20  Resources Control Board ("State Board") concerning the Facility, including all

21  documents and reports submitted to SMARTS as required by the General Permit or

22  then-applicable NPDES permit. Documents and reports sent by Defendant to the

23  Regional Board or State Board shall be electronically mailed to LA Waterkeeper

24  within five (5) business days after submission to the Regional Board or State

25  Board. Documents received by Defendant from the Regional Board or State Board

26  shall be electronically mailed to LA Waterkeeper within five (5) business days

27  after receipt.

28

## VI.    EMPLOYEE TRAINING

35.    During the Term, Defendant shall train its employees to be able to comply with, at minimum, the requirements of this Consent Decree, the then-current SWPPP, and the General Permit or then-applicable NPDES permit. Defendant's training program shall ensure (a) that there are sufficient staff assigned to achieve compliance with the General Permit or then-applicable NPDES permit, the then-current SWPPP, and this Consent Decree, and (b) that these employees are properly trained to perform the required compliance activities. Within forty-five (45) days of the Effective Date, Defendant shall review its existing training program and shall make any necessary changes to ensure compliance with this Section VI.

36.    Defendant's training program shall require specific training to include at least the following:

a.    Non-Storm Water Discharge Training. The Defendant shall train all staff on the General Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are and how to detect them and prevent them.

b.    BMP Training. The Defendant shall train all employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility. Such training shall include all inspection, cleaning, and operation and maintenance activities included in the Structural BMP Plan for the storm water conveyance and advanced treatment system.

c.    Storm Water Sampling Training. Defendant shall assign and train adequate staff necessary to collect storm water samples from each discharge location as required by this Consent Decree and the General Permit or then-applicable NPDES permit. Staff training shall include training in proper sampling

[PROPOSED] CONSENT DECREE

61225437.v1

1    protocols, including for the collection, storage, handling, cooling, shipping, chain-

2    of-custody, and transportation of such samples, to ensure that such samples are

3    received by the laboratory within temperature criteria and laboratory method

4    allowable hold times. Such training shall include how to keep records of all

5    sampling events and laboratory results.

6          d.    <u>Visual Observation Training</u>. The Defendant shall provide

7    training to all individuals performing visual observations at the Facility pursuant to

8    this Consent Decree and the General Permit or then-applicable NPDES permit and

9    training in proper record keeping for all such visual observations.

10       37.    Defendant shall train its employees consistent with this Section VI on

11   an annual basis, or as otherwise required to ensure compliance with the terms of

12   this Consent Decree, by a private consultant or a representative of Defendant who

13   is familiar with the requirements of this Consent Decree, the then-current SWPPP,

14   and the General Permit or then-applicable NPDES permit. The training shall be

15   repeated as necessary to ensure that all such employees are familiar with the

16   requirements of this Consent Decree, the General Permit or then-applicable

17   NPDES permit, and the then-current SWPPP. All new staff with any responsibility

18   for implementing the then-current SWPPP or compliance with the General Permit

19   or then-applicable NPDES permit and this Consent Decree (including all members

20   of the PPT), shall receive this training before assuming such responsibilities.

21       38.    The Defendant shall maintain training records to document

22   compliance with these training program requirements and shall provide LA

23   Waterkeeper with a copy of these records within five (5) business days of receipt

24   of a written request.

25   **VII.   SWPPP REVISIONS**

26       39.    <u>Initial SWPPP Revisions</u>: Within sixty (60) days after the Effective

27   Date of this Consent Decree, Defendant shall prepare a revised SWPPP to:

28

61225437.v1

1            a.     Incorporate fully the requirements of the General Permit, and

2    this Consent Decree, including but not limited to revisions to the SWPPP to

3    specify performance of the Remedial Measures referred to in Paragraph 12 a, b, c

4    and e and Paragraph 13 of this Consent Decree.

5            b.     Correct the information concerning all personnel responsible

6    for storm water activities, including correcting the person responsible for the task

7    of entering required information into the SMARTS database.

8            c.     Designate an area for the storage of all equipment, materials,

9    trash, scrap metal, vehicle parts, and waste at the Facility.

10           d.     Describe the training program referenced in Section VI of this

11   Consent Decree.

12           e.     Describe all BMPs and how they will be operated and/or

13   maintained.

14           f.     Denote all actions taken to control dust, particulate matter and

15   other pollutants at the Facility.

16           g.     Describe where and when storm samples are to be collected and

17   explain why the sample points are representative of off-site discharge and include a

18   checklist that must be used by trained Facility personnel when conducting the

19   storm water sampling required under the General Permit or then-applicable

20   NPDES permit and this Consent Decree.

21           h.     Describe where and when visual inspections of the Facility are

22   to be performed and include a visual inspection checklist that must be used by

23   trained Facility personnel when conducting the visual observations required under

24   the General Permit or then-applicable NPDES permit and this Consent Decree.

25           i.     Update the SWPPP to reflect any changes in existing Discharge

26   Points, if necessary.

27

28

40.    Future SWPPP Revisions:

a.    Within thirty (30) days after completion of the Structural BMP
Plan improvements required by this Consent Decree, or any subsequent changes
thereto, Defendant shall revise the then-current SWPPP to reflect the additional or
modified structural BMPs.

b.    Within thirty (30) days after approval of any Action Plan by LA
Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise
the then-current SWPPP to reflect the changes required by the Action Plan.

c.    Within thirty (30) days after any changes in industrial activities,
sources of industrial pollutants, changes to Discharge Points, or changes to sections
of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including
but not limited to, changes in Facility contacts or PPT members, changes or
additions of BMPs, or changes in or additions of industrial activities that impact
storm water discharge), Defendant shall revise the then-current SWPPP to reflect
such changes.

d.    As part of any future SWPPP revision (including any created to
reflect new structural BMPs or Action Plan BMPs), such SWPPP revision shall
include a revised Site Map that clearly identifies all changes (including but not
limited to, all components of the Facility storm water conveyance system (such as
all berms, dikes, walls and all other structures controlling the flow of surface
water) and the advanced storm water treatment system).

41.    Commenting on SWPPP Revisions:

a.    For the initial SWPPP revisions called for in Paragraph 39 of
this Consent Decree, the Defendant shall submit the revised SWPPP to LA
Waterkeeper for review and comment within five (5) business days after its
completion and approval by LKQ. LA Waterkeeper shall provide comments, if
any, to the Defendant within thirty (30) days of receipt of the SWPPP. The
Defendant shall incorporate LA Waterkeeper's comments into the SWPPP or shall

[PROPOSED] CONSENT DECREE

61225437.v1

1   explain in writing why any comment is not incorporated within thirty (30) days
2   after receiving LA Waterkeeper's comments. Any disputes over the adequacy of
3   the revised SWPPP shall be resolved pursuant to the Dispute Resolution provisions
4   of Section X (DISPUTE RESOLUTION).

5        b.      For any future SWPPP revisions called for in Paragraph 40 of
6   this Consent Decree, the Defendant shall submit any revised SWPPP to LA
7   Waterkeeper for review and comment within five (5) business days after its
8   completion and approval by LKQ. LA Waterkeeper shall provide comments, if
9   any, to the Defendant within thirty (30) days of receipt of any revised SWPPP. The
10  Defendant shall incorporate LA Waterkeeper's comments into any revised
11  SWPPP, or shall explain in writing why any comment is not incorporated within
12  thirty (30) days after receiving comments. Any disputes as to the adequacy of the
13  SWPPP shall be resolved pursuant to the Dispute Resolution provisions of Section
14  X (DISPUTE RESOLUTION).

15  **VIII.  MITIGATION, FEES, AND COSTS**

16        42.    <u>Supplemental Environmental Project Funding</u>:  Within thirty (30)
17  days after the Effective Date, as mitigation of the violations alleged in LA
18  Waterkeeper's Notice and Complaint, Defendant shall tender payment to the Rose
19  Foundation for Communities and the Environment the sum of Forty Thousand
20  Dollars ($40,000) for supplemental environmental projects relating to the
21  reduction, prevention or mitigation of, or research on, the effects of discharges of
22  pollutants to the Dominguez Channel watershed, Los Angeles Harbor, and/or
23  Pacific Ocean waters adjoining Los Angeles. Such payment shall be sent via
24  certified mail, return receipt requested, to the following address (with notice to the
25  LA Waterkeeper that such payment has been sent):

26        Tim Little
        Rose Foundation for Communities and the Environment
27      201 Fourth Street, Suite 102
        Oakland, California 94607
28

- 27 -

43.    <u>Reimbursement of Fees and Costs</u>:  Within thirty (30) days after the Effective Date, Defendant shall reimburse LA Waterkeeper in the amount of Five Hundred and Seventy-Five Thousand Dollars ($575,000) to help defray LA Waterkeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Defendant's attention, and negotiating a resolution of this action in the public interest. Such payment shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payment shall be sent via certified mail, return receipt requested, to the following address:

Christopher A. Sproul
Environmental Advocates
5135 Anza Street
San Francisco, California 94121

44.    <u>Compliance Monitoring Funds</u>:  Defendant shall reimburse LA Waterkeeper an amount equal to $3,000 per year ("Base Monitoring Payment") for costs and fees associated with monitoring Defendant's compliance with this Consent Decree, except in the event that there is an Annual Site Inspection or Dispute-Related Site Inspection pursuant to Paragraph 29, in which case Defendant shall reimburse LA Waterkeeper an additional $2,000 per site inspection ("Site Inspection Monitoring Payment") during such year. Monitoring activities include site inspections, review of the Defendant's reports, including the monitoring data and visual inspection documentation included therein, discussion with representatives of Defendant concerning the effectiveness of remedial measures and the potential need for additional remedial measures. Within thirty (30) days after the Effective Date, Defendant shall tender payment of the initial Base Monitoring Payment, and shall make payment of each subsequent Base Monitoring Payment on July 1 of each subsequent year during the Term (commencing on July 1, 2024). Defendant shall tender payment of each Site Inspection Monitoring

[PROPOSED] CONSENT DECREE

61225437.v1

1   Payment within thirty (30) days after each site inspection. For each payment

2   hereunder, Defendant shall tender such payment by check payable to "Los Angeles

3   Waterkeeper." Defendant shall send payment via certified class mail, return receipt

4   requested to: Los Angeles Waterkeeper, 360 E 2nd Street, Suite 250, Los Angeles,

5   CA 90012.

6       45.   <u>Action Plan Payments</u>: Any time Defendant submits an Action Plan to

7   LA Waterkeeper as required by this Consent Decree, Defendant shall tender an

8   additional compliance monitoring payment in the amount of $2,000, not to exceed

9   a total payment amounts of $4,000 per year, within thirty (30) days after the Action

10   Plan is finalized pursuant to Paragraph 18. Action Plan payments are to be made

11   payable to LA Waterkeeper in the manner described in the previous paragraph.

12   **IX.   STIPULATED PAYMENTS**

13       46.   In the event Defendant fails to submit to LA Waterkeeper any

14   document, report or other communication required by this Consent Decree, for

15   more than ten (10) days after its due date, Defendant shall pay a per day payment

16   of $150 for each day following notice by LA Waterkeeper of the late document,

17   report or communication, as applicable.

18       47.   Defendant shall pay interest on any payments, fees, or costs owed

19   pursuant to this Consent Decree that are not received by the due date. The interest

20   shall accrue starting the fifth business day following notice of non-payment by LA

21   Waterkeeper and shall be computed at a rate equal to the lesser of: (i) 10% per year

22   (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest

23   shall continue to accrue daily on any outstanding balance until Defendant is current

24   on all payments then due under this Consent Decree.

25       48.   Any stipulated payments pursuant to this Part shall be paid to the Rose

26   Foundation for Communities and the Environment within fourteen (14) days after

27   the resolution of the event that precipitated the Stipulated Payment liability.

28   Stipulated payments shall be used for projects relating to the Dominguez Channel

watershed, Los Angeles Harbor, and/or Pacific Ocean waters adjoining Los Angeles. Defendant shall send LA Waterkeeper notice of any such stipulated payments within seven (7) days after tendering such payments.

**X.     DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**

49.     Dispute Resolution Process: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) calendar days after receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the District Court of California, Central District, which shall retain jurisdiction over the action for the limited purposes of enforcement of the terms of this Consent Decree. The Parties agree not to object to an expedited hearing schedule on any Dispute Resolution motion if one of the Parties requests one. For any Dispute Resolution that involves bringing a motion before the District Court, the Party that constitutes the "prevailing or substantially prevailing party" pursuant to 33 U.S.C. § 1365(d) as interpreted by applicable case law shall be entitled to recover from the other Party its reasonable attorneys' fees and costs (subject to proof) and, whatever penalty the court may impose. Both Parties shall bear their respective attorneys' fees and costs for any other Dispute Resolution process undertaken pursuant to this Paragraph 49. The foregoing shall not affect LA Waterkeeper's right to any payment owed to LA Waterkeeper with respect to any Dispute-Related Site Inspection pursuant to Paragraph 44.

61225437.v1

## XI.   PUBLICITY

50.     During the Term, LA Waterkeeper shall not post a copy of this Consent Decree on its website or in any LA Waterkeeper publication or promotional media.

## XII.   EFFECTIVE AND TERMINATION DATES

51.     Within three (3) days of the final signature of the Parties, LA Waterkeeper shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Court shall not enter its judgment on consent until the expiration of this review and comment period. If EPA or DOJ requests or suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form presented, the Parties shall within ten (10) days meet and confer on whether to revise this Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ and/or otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually agree to any such revisions or modifications, the Parties shall so notify the Court and request entry of the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in the form presented, the Parties will attempt in good faith to agree to revisions of this Consent Decree necessary so that it is acceptable to the Court.

52.     This Consent Decree shall terminate on either the date that is three (3) years from the Effective Date (provided that the Structural BMP Plan is implemented by October 1, 2023), or otherwise as of June 30 following the end of the second full Wet Season following complete implementation of the Structural BMP Plan pursuant to Paragraph 14 (e.g., if the Structural BMP Plan is fully implemented on December 31, 2023, the Consent Decree would expire on June 30, 2026), in either case, provided that Defendant has made all monetary payments owed under the Consent Decree and there is no pending Dispute Resolution proceeding pursuant to the provisions of Section X (DISPUTE RESOLUTION)

1    (the "Termination Date"). If Defendant has not made all monetary payments owed

2    under the Consent Decree or if there is a pending Dispute Resolution proceeding,

3    the Consent Decree shall be extended until Defendant has made all monetary

4    payments owed under the Consent Decree and all pending Dispute Resolution

5    proceedings have been resolved.

6    **XIII.  MISCELLANEOUS**

7            53.    <u>Notices</u>. Except as otherwise expressly provided in this Consent

8    Decree, whenever under the terms of this Consent Decree notice is required to be

9    given or a report or other document is required to be forwarded by one Party to

10   another, it shall, to the extent feasible be sent to the following individuals as

11   electronic computer files at the e-mail addresses specified below. If a given

12   document cannot be e-mailed, it shall be mailed by U.S. Mail to the following

13   addresses. Any change in the individuals designated by either Party must be made

14   in writing to the other Parties.

15   As to LA Waterkeeper:

16           Barak Kamelgard
17           Senior Attorney
             Los Angeles Waterkeeper
18           360 E 2nd Street, Suite 250
19           Los Angeles, CA 90012
             barak@lawaterkeeper.org
20

21           Benjamin Harris
22           Staff Attorney
             Los Angeles Waterkeeper
23           360 E 2nd Street, Suite 250
24           Los Angeles, CA 90012
             ben@lawaterkeeper.org
25

26

27

28

[PROPOSED] CONSENT DECREE

61225437.v1

As to Defendant:

Andrew R. Andreasik
Vice President and Senior Real Estate Counsel
LKQ Corporation
500 West Madison St., Suite 2800
Chicago, IL 60661
axandreasik@LKQCORP.com

Byron P. Gee
Partner
Nossaman LLP
777 South Figueroa Street, 34th Floor
Los Angeles, CA 90017
bgee@nossaman.com

54.    _Execution in Counterparts_.  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

55.    _Severability_.  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the remaining provisions shall not be adversely affected.

56.    _Construction_.  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

57.    _Integrated Consent Decree_.  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

58.    _Facsimile Signatures_.  Signatures of the Parties transmitted via electronic mail or by facsimile shall be deemed binding.

59.    _Force Majeure_.  Neither Party shall be considered to be in default in the performance of any of its Consent Decree obligations when its failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, natural catastrophe, restraint by court order or public

1  authority, worker shortage, supply chain constraints, or material/equipment

2  shortages, delay in obtaining any permit except insofar as caused by any lack of

3  reasonable diligence in applying for or otherwise procuring such permit, or any

4  other matter outside the reasonable control of such Party. A Force Majeure event

5  does not include normal inclement weather, such as anything less than or equal to a

6  100 year/24 hour storm event, or inability to pay. The Party claiming the Force

7  Majeure shall have the burden of establishing that a Force Majeure event that it

8  could not reasonably have been expected to avoid, and which by exercise of due

9  diligence it has been unable to overcome, has prevented its compliance. The Party

10  claiming the Force Majeure shall make diligent and good faith efforts to resolve

11  any Force Majeure event and return to compliance. The Party claiming the Force

12  Majeure shall notify the other Party in writing within twenty-one (21) calendar

13  days of the date that it first knew of the event or circumstance that caused or would

14  cause a violation of this Consent Decree. The notice shall describe the reason for

15  the nonperformance and specifically refer to this Section. It shall describe: (i) the

16  anticipated length of time the delay may persist; (ii) the cause or causes of the

17  delay; (iii) the measures taken or to be taken by the Party to prevent or minimize

18  the delay; (iv) the schedule by which the measures will be implemented; and (v)

19  the anticipated date of compliance. The Party claiming the Force Majeure shall

20  adopt all reasonable measures to avoid and minimize such delays. Any disputes

21  between the parties concerning the existence of a Force Majeure shall be resolved

22  pursuant to the Dispute Resolution provisions of Section X (DISPUTE

23  RESOLUTION).

24    60.    The parties hereto enter into this Consent Decree and shall submit it to

25  the Court for its approval and entry as a final judgment.

26  **IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree

27  as of the date first set forth above.

28

IT IS SO ORDERED

Dated ___ February 21, 2023

_____
United States District Judge

Case No: 2:22-cv-00388-PA-JC

- 34 -
[PROPOSED] CONSENT DECREE

61225437.v1

1

2

3 _____        _____

4

5

6

7 APPROVED AS TO FORM:

8 ENVIRONMENTAL ADVOCATES

9

10 Dated:    [_____]          By: _____

11                                      Christopher Sproul
                                        Attorney for Plaintiff
12

13

14 Dated:    [_____]          By: _____

15                                      Byron Gee
                                        Attorney for Defendant Pick-
16                                      Your-Part Auto Wrecking

17

18

19 APPROVED AS TO CONTENT:

20

21 Dated:    [_____]          By: _____

22                                      Bruce Reznik
                                        Los Angeles Waterkeeper
23

24 Dated:    [_____]          By: _____

25                                      Walter Hanley
                                        Pick-Your-Part Auto Wrecking
26

27

28

- 35 -                          Case No. 2:22-cv-00388-PA-JC
[PROPOSED] CONSENT DECREE

1   **IT IS SO ORDERED:**

2

3   Date: _____    _____

4                   Honorable Percy Anderson
                     UNITED STATES DISTRICT JUDGE

5                   CENTRAL DISTRICT OF CALIFORNIA

6

7   **APPROVED AS TO FORM:**

8   **ENVIRONMENTAL ADVOCATES**

9

10  Dated:   [_____]    By: _____

11                        Christopher Sproul
                        Attorney for Plaintiff

12

13

14  Dated:   [_____]    By: _____

15                        Byron Gee
                        Attorney for Defendant Pick-

16                        Your-Part Auto Wrecking

17

18

19  **APPROVED AS TO CONTENT:**

20

21  Dated: [Jan 11 2023]    By: _____

22                        Bruce Reznik
                        Los Angeles Waterkeeper

23

24  Dated:   [_____]    By: _____

25                        Walter Hanley
                        Pick-Your-Part Auto Wrecking

26

27

28

61225437.v1

**IT IS SO ORDERED**:

Date: _____          _____
                                Honorable Percy Anderson
                                UNITED STATES DISTRICT JUDGE
                                CENTRAL DISTRICT OF CALIFORNIA


APPROVED AS TO FORM:

ENVIRONMENTAL ADVOCATES

                                        *Christopher A. Sproul*
Dated:    January 11, 2023      By: _____
                                     Christopher Sproul
                                     Attorney for Plaintiff


Dated:    [_____]        By: _____
                                     Byron Gee
                                     Attorney for Defendant Pick-
                                     Your-Part Auto Wrecking


APPROVED AS TO CONTENT:

Dated:    [_____]        By: _____
                                     Bruce Reznik
                                     Los Angeles Waterkeeper


Dated:    [_____]        By: _____
                                     Walter Hanley
                                     Pick-Your-Part Auto Wrecking

[PROPOSED] CONSENT DECREE

61225437.v1

1  IT IS SO ORDERED:

2

3  Date:   _____

4                                    Honorable Percy Anderson
                                      UNITED STATES DISTRICT JUDGE
5                                     CENTRAL DISTRICT OF CALIFORNIA

6

7  APPROVED AS TO FORM:

8  ENVIRONMENTAL ADVOCATES

9

10 Dated:   [_____]        By:   _____

11                                     Christopher Sproul
                                       Attorney for Plaintiff
12

13

14 Dated:   [ 11/12/2023 ]       By:   _____

15                                     Byron Gee

16                                     Attorney for Defendant Pick-
                                       Your-Part Auto Wrecking
17

18

19 APPROVED AS TO CONTENT:

20

21 Dated:   [_____]        By:   _____

22                                     Bruce Reznik
                                       Los Angeles Waterkeeper
23

24 Dated:   [ 1/11/2023 ]        By:   Walter Hanley

25                                     Walter Hanley
                                       Pick-Your-Part Auto Wrecking
26

27

28

- 35 -                                 Case No. 2:22-cv-00388-PA-JC
                   CONSENT DECREE

61225437.v1